# In the United States Court of Federal Claims

No. 19-236C
Filed: March 31, 2021
FOR PUBLICATION

**JONATHAN R. HIRSCH,**

   *Plaintiff*,

v.

**UNITED STATES,**

   *Defendant*.

*Thomas A. Coulter*, Whiteford, Taylor & Preston, LLP, Richmond, VA, for the plaintiff.

*Richard P. Schroeder*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Major Nicholas D. Morjal*, U.S. Army Legal Services Agency, of counsel, for the defendant.

## MEMORANDUM OPINION

### *HERTLING*, Judge

  The plaintiff, Jonathan R. Hirsch, is a former United States Army Reserve ("USAR") officer in the Judge Advocate General's Corps ("JAG Corps") and was discharged from the U.S. Army on June 1, 2016. He challenges a decision by the Army Board for Correction of Military Records ("ABCMR") to uphold his discharge and seeks correction of his military record and backpay. He alleges that he was wrongfully discharged because the Army miscalculated his mandatory removal date under 10 U.S.C. § 14507(a). Specifically, he argues that his service during law school should have been excluded from the Army's computation of the length of his commissioned service under the statutory exclusion in 10 U.S.C. § 14706(a)(3). The ABCMR found that the plaintiff is not eligible for that exclusion. The defendant, the United States, argues that the ABCMR's decision should be upheld because it is consistent with the statute. Both parties agree that the plain language of the statutory exclusion under § 14706 is unambiguous but disagree over how to read the text.

  The parties have cross-moved for judgment on the administrative record under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). Because the statutory exclusion in § 14706(a)(3) does not apply to the plaintiff's service during law school pursuant to § 14706(b), the ABCMR's decision to deny the plaintiff relief is consistent with the law. Accordingly, the Court grants the defendant's motion for judgment on the administrative record and denies the plaintiff's motion for judgment on the administrative record.

## I. BACKGROUND

### A. Legal Framework

A reserve officer holding the rank of lieutenant colonel in the Army must retire after completing 28 years of commissioned service, if the officer is not on a list of officers recommended for promotion to the next higher grade. *See* 10 U.S.C. § 14507(a). The "first day of the month after the month in which the officer completes 28 years of commissioned service" is referred to as the mandatory removal date. *See id.*

Not all commissioned service is included when calculating whether a reserve officer at the rank of lieutenant colonel has served 28 years. Section 14706 of Title 10 provides three exclusions from the computation of commissioned service:

> (a) For the purpose of this chapter and chapter 1407 of this title [which includes 10 U.S.C. § 14507], a Reserve officer's years of service include all service of the officer as a commissioned officer of a uniformed service other than the following:
>
>> (1) Service as a warrant officer.
>>
>> (2) Constructive service.
>>
>> (3) Service after appointment as a commissioned officer of a reserve component while in a program of advanced education to obtain the first professional degree required for appointment, designation, or assignment to a professional specialty, but only if that service occurs before the officer commences initial service on active duty or initial service in the Ready Reserve in the specialty that results from such a degree.
>
> (b) The exclusion under subsection (a)(3) does not apply to service performed by an officer who previously served on active duty or participated as a member of the Ready Reserve in other than a student status for the period of service preceding the member's service in a student status.
>
> (c) For purposes of subsection (a)(3), an officer shall be considered to be in a professional specialty if the officer is appointed or assigned to the Medical Corps, the Dental Corps, the Veterinary Corps, the Medical Service Corps, the Nurse Corps, or the Army Medical Specialists Corps or is designated as a chaplain or judge advocate.

10 U.S.C. § 14706.

### B. Facts

The facts are not in dispute. The plaintiff served in the U.S. Army for approximately 28 years. From August 1984 to May 1988, the plaintiff was enrolled in the Reserve Officers' Training Corps ("ROTC") at Georgetown University. (ECF 1, ¶ 18.) He was commissioned as a second lieutenant in the USAR on May 27, 1988. (*Id.* ¶ 20.) Between May 1988 and September 1992, he served as a transportation officer in various military statuses, including the Individual Ready Reserve and on active duty. (*Id.* ¶¶ 21-22; *see also* ECF 1-1, Ex. 2.)

From September 1992 to May 1995, having completed his active-duty service required to satisfy his ROTC obligation, the plaintiff attended law school at the Louisiana State University Paul M. Hebert Law Center. (ECF 1, ¶¶ 23, 25.) While in law school, the plaintiff continued to serve as a reserve officer. (*Id.* ¶ 24.) He ultimately applied to the JAG Corps and, after graduation from law school, completed the JAG basic course. (*Id.* ¶¶ 26, 28.) He served in the JAG Corps, in both active and reserve statuses, from September 1995 until May 31, 2016, at which time, having attained the rank of lieutenant colonel, he was involuntarily retired pursuant to 10 U.S.C. § 14507(a). (*Id.* ¶ 28.)

The three years that the plaintiff attended law school were included in the plaintiff's total commissioned service for the purpose of calculating the mandatory removal date. (*See id.*)

### C. Procedural History

The plaintiff petitioned the ABCMR twice prior to his retirement, arguing that his 32 months of service during law school should be excluded from his total commissioned service pursuant to 10 U.S.C. § 14706 when calculating his mandatory removal date. (*See* AR 4-15, 85-90.[1]) The plaintiff requested that his mandatory retirement date be adjusted from June 1, 2016 to June 1, 2019. (AR 4, 85.) In 2013 and, on reconsideration, in 2016, the ABCMR denied his petitions. (AR 2, 84.)

On February 12, 2019, the plaintiff filed this complaint challenging the ABCMR's 2013 and 2016 decisions. (ECF 1.) The plaintiff alleges that those ABCMR decisions are arbitrary, capricious, rendered in bad faith, or contrary to the plain reading of 10 U.S.C. § 14706. (*Id.* ¶¶ 50-56.) The plaintiff seeks a correction of his military records, backpay, costs and expenses, and declaratory relief. (*Id.*, Prayer for Relief, (a)-(k).)

The plaintiff moved to supplement the administrative record with several documents, but the Court denied that motion. *Hirsch v. United States*, 144 Fed. Cl. 55 (2019). The plaintiff moved again to supplement the administrative record with an Army instructional briefing slide that purported to reflect the Army's own interpretation of the relevant statutory scheme. The Court instead remanded the case to the ABCMR to review the new document and to determine in the first instance its impact on the plaintiff's claim. *Hirsch v. United States*, No. 19-236C,

---

[1] Citations to the administrative record (ECF 8, supplemented by ECF 12, 36, and 46) are denoted as "AR" with the pagination reflected in the record.

2019 WL 4316880 (Fed. Cl. Sept. 12, 2019).  On remand, the ABCMR once again denied the plaintiff relief but relied, in part, on the current version of DA Form 3725 (Army Reserve Status and Address Verification), rather than the version of the form in effect during the relevant period to support its decision.  (*See* ECF 40.)  As a result, on April 20, 2020, the Court again remanded the matter to the ABCMR.  (*Id.*)

On June 12, 2020, the ABCMR again denied the plaintiff's request for relief.  (AR 659-72.)  The ABCMR found that the plaintiff did not qualify for the exclusion under 10 U.S.C. § 14706(a)(3).  (AR 667-68.)  The ABCMR reasoned that the plaintiff's service in the JAG Corps occurred after he had completed his initial Army service both on active duty and in the Ready Reserve.  (AR 668.)  The plaintiff had not requested and was not approved for advanced education delay to attend law school, and he was not on military orders to attend law school.  (AR 668.)  Even assuming the plaintiff's DA Form 3725 had recorded his student status, the ABCMR found that such a notation would not mandate the exclusion of the plaintiff's service during law school from the Army's calculation of his mandatory removal date.[2]  (AR 668-69.)  The plaintiff was performing service, earning retirement points, and earning an income in the USAR while attending law school.  (AR 669.)  For all these reasons, the ABCMR found that the plaintiff's service while attending law school—after his original active service and prior to his commission as a JAG Corps officer—was properly included in his total commissioned service for the calculation of his mandatory removal date.  (*Id.*)

The parties have cross-moved for judgment on the administrative record.  (ECF 50 & 57.)  Considering the ABCMR's earlier decisions superseded, the plaintiff has challenged the ABCMR's June 2020 decision as arbitrary, capricious, or contrary to law.  The matter has been fully briefed, and the Court heard oral argument on March 11, 2021.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Tucker Act, 28 U.S.C. § 1491, limits this court's jurisdiction to causes of action based on money-mandating statutes and regulations.  *Metz v. United States*, 466 F.3d 991, 995-98 (Fed. Cir. 2006).  A statute is money-mandating when it is "reasonably amenable to the reading that it mandates a right of recovery in damages."  *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003).  The Military Pay Act, 37 U.S.C. § 204, "serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge."  *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997).  Because the plaintiff's claim arises under the Military Pay Act, the Court has jurisdiction to hear this case.

In a motion for judgment on the administrative record pursuant to RCFC 52.1, the court's review is limited to the administrative record, and the court makes findings of fact as if it were

---

[2] The ABCMR had to assume that the plaintiff's DA Form 3725 had recorded the plaintiff's student status because the plaintiff's actual DA Form 3725 had been lost.  (ECF 37 at 2 n.1; *see also* ECF 1-1, Ex. 1.)

4

conducting a trial on a paper record.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005); *see also Young v. United States*, 497 F. App'x 53, 58-59 (Fed. Cir. 2012) (per curiam), *cert. denied*, 569 U.S. 964 (2013) (applying the *Bannum* standard of review to RCFC 52.1 motion involving a decision of a military records-correction board).  The court must determine whether a party has met its burden of proof based on the evidence contained within the administrative record.  *Bannum*, 404 F.3d at 1355.  Genuine issues of material fact will not foreclose judgment on the administrative record.  *Id.* at 1356.

The court reviews decisions of military records-correction boards under the standards of the Administrative Procedure Act ("APA").  *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009); *see* 5 U.S.C. § 706 (establishing the scope of review under the APA).  Under the APA standard, the court must uphold a military records-correction board's decision "unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."  *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010).

In a case involving the interpretation of a statute, a court gives no deference to the ABCMR's statutory construction of an unambiguous statute and reviews the administrative decision *de novo* to resolve the legal issue presented.  *See* 5 U.S.C. § 706 ("To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."); *Hawkins v. United States*, 469 F.3d 993, 1000 (Fed. Cir. 2006) ("Statutory construction is a matter of law that we review *de novo*.").  The issue presented in this case is purely a legal one; no facts are in dispute.  The sole issue for resolution is the meaning of 10 U.S.C. § 14706.

### III.  DISCUSSION

Both parties argue that the exclusion under 10 U.S.C. § 14706 is unambiguous, and that the case accordingly can be decided by reference to that plain, unambiguous language.  The plaintiff argues that the ABCMR's decision is arbitrary, capricious, or contrary to law, because it misconstrued the statute's plain language and relied on materials beyond the statute.  The defendant responds that the ABCMR's decision is consistent with the statute and, thus, not contrary to law.

The Court first turns to the text of § 14706 to determine whether the provision is in fact unambiguous and then reviews the ABCMR's decision.

#### A.  10 U.S.C. § 14706: Mandatory Removal Date Exclusion

When parties dispute a statute's meaning, "a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself."  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019).  It is a "'cardinal principle' of interpretation that courts 'must give effect, if possible, to every clause and word of a statute.'"  *Loughrin v. United*

*States*, 573 U.S. 351, 358 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (citation omitted)). Accordingly, courts "'are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.'" *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019) (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988)).

For purposes of calculating an officer's mandatory removal date under 10 U.S.C. § 14507(a), some commissioned service is excluded pursuant to 10 U.S.C. § 14706(a). As relevant here, service while in a program of advanced education is excluded if it qualifies under § 14706(a)(3):

> Service after appointment as a commissioned officer of a reserve component while in a program of advanced education to obtain the first professional degree required for appointment, designation, or assignment to a professional specialty, *but only if that service occurs before the officer commences initial service on active duty or initial service in the Ready Reserve in the specialty that results from such a degree*.

*Id.* § 14706(a)(3) (emphasis added). An officer who is designated as a judge advocate is in a "professional specialty." *Id.* § 14706(c).

Subsection (b), however, limits the scope of the exclusion under subsection (a)(3), providing in full:

> The exclusion under subsection (a)(3) does not apply to service performed by an officer *who previously served on active duty or participated as a member of the Ready Reserve in other than a student status for the period of service preceding the member's service in a student status*.

10 U.S.C. § 14706(b) (emphasis added).

The parties do not dispute that the plaintiff attained a professional degree (*i.e.*, a law degree) required for designation to a professional specialty (*i.e.*, as a judge advocate). They do dispute, however, whether the final clause of subsection (a)(3) disqualifies the plaintiff from the exclusion. If subsection (a)(3) applies, then the plaintiff should not have been subject to mandatory removal because his law school service would not count towards his total years of service. Even if the plaintiff's service would be excluded under the terms of subsection (a)(3) itself, the parties also dispute whether subsection (a)(3) does not apply to the plaintiff's service during law school pursuant to subsection (b)'s limitation on (a)(3).

### 1. 10 U.S.C. § 14706(a)(3)

The exclusion of certain service from the total service that counts toward a mandatory removal date is contained in subsection (a)(3), but is limited by its final clause: "but only if that service occurs before the officer commences initial service on active duty or initial service in the

Ready Reserve in the specialty that results from such a degree." *Id.* § 14706(a)(3).  The parties disagree about the meaning of this text.

The ABCMR found that the plaintiff was not eligible for the exclusion under subsection (a)(3).  The ABCMR rested its decision, in part, on its interpretation of the final clause, noting:

> The applicant independently (*i.e.*, not pursuant to military orders) attended law school was [*sic*] after his initial service on active duty and in the Ready Reserve as a commissioned USAR officer, not before.  His service in the [JAG Corps] specialty was after he had completed initial service both on active duty and in the Ready Reserve.

(AR 668.)  The ABCMR found that the plaintiff's reserve service while he attended law school was properly included in his total commissioned service.  (AR 669.)

As did the ABCMR, the defendant interprets the final clause of subsection (a)(3) to apply the exclusion only to service by reserve officers who had not previously served on active duty or in the Ready Reserve.  (ECF 57 at 13.)  The word "initial" in the final clause, the defendant argues, requires the service in the professional specialty to be the officer's "initial" service in the Army.  (*Id.* at 6.)  On the defendant's interpretation, the plaintiff is ineligible for the exclusion because his initial service was as a transportation officer on active duty and in the Ready Reserve prior to his service in the JAG Corps.  (*Id.* at 6-7, 13.)

To show that an officer can be commissioned without initial service on active duty or in the Ready Reserve, the defendant ties § 14706 to the ROTC program, in which an officer may receive an educational delay.  (*Id.* at 16-17.)  When officers receive an educational delay for a program of advanced education, "[t]heir service in the program occurs before they commence *initial* service on active duty or in the Ready Reserve in the specialty that results from their advanced degree."  (*Id.* at 16 (citing Army Reg. 601-25 ¶ 1-1 (Mar. 7, 1986)) (emphasis in original).)  *See also* 10 U.S.C. § 2108(d) (providing, upon the Secretary's approval, a delay of a member's obligated service for graduate or professional study).

The defendant argues that Congress intended for § 14706(a)(3) to apply to ROTC-related educational delay.  The defendant notes that the ROTC statute uses the same phrase as § 14706.  (ECF 68 at 15.)  The ROTC statute's definitional provision refers to "students enrolled in an advanced education program beyond the baccalaureate degree level" and § 14706 refers to a "program of advanced education."  10 U.S.C. §§ 2101(3), 14706(a)(3); *see also id.* § 2107(c)(2) ("advanced education program").  For further support, the defendant points to evidence of congressional intent; specifically, the defendant notes that Congress described the purpose of § 14706(a)(3) using the phrase "college student commissioning service status," which is similar to the language it used in statute to describe the ROTC program.  (*See* ECF 57 at 20-21).  *See also* H.R. Rep. No. 106-301, at 730 (1999) (Conf. Rep.); 10 U.S.C. § 2102(a) (establishing ROTC as a program to prepare selected students for commissioned service).

The text of § 14706(a)(3), however, is not limited to ROTC-related educational delay; the statute contains no reference to the ROTC. The statute does not use the phrase, "college student commissioning status," as appears in the congressional reports. As the plaintiff notes, if Congress had intended § 14706 to apply only in connection with the ROTC program, then it could have drafted the statute that way. (ECF 62 at 8-9 (citing 10 U.S.C. § 14507(c)(1) (providing explicit reference to ROTC in a similar Air Force statute).) Instead, subsection (b) contains the phrase, "student status," which does not appear to be found in any other provision of Title 10. ROTC-related educational delays may have prompted Congress to enact § 14706(a)(3), but the provision is not on its face limited to such instances. Based on the unambiguous text of the statute, the Court rejects the defendant's approach and finds that § 14706(a)(3) is not limited to the ROTC program.

The plaintiff interprets the final clause of § 14706(a)(3) to limit the exclusion to officers who have not previously served in the specialty that follows the course of advanced education. (ECF 50 at 20.) The service in a program of advanced education, in other words, must occur before the officer's initial service in the specialty that results from such a degree. (*Id*.) The defendant responds that the plaintiff's proffered interpretation reads the word "initial" out of the statute. (ECF 57 at 15.) On the plaintiff's reading, however, the word "initial" refers to the officer's service in the specialty, rather than service in general, as the defendant has interpreted the word. (ECF 62 at 11.) Although the defendant notes that service in the JAG Corps following law school would always be initial service in the JAG Corps because such service requires a law degree, the plaintiff admits that the JAG Corps is a bad example. (*See* ECF 57 at 15; ECF 62 at 11.) As an alternative example, the plaintiff notes that the final clause would prevent an officer in the Medical Service Corps from shifting focus between medical specialties and excluding the time spent seeking a different degree in a similar field. (ECF 62 at 11-12.) This reading, too, seems strained. Dermatologists, for example, do not typically change focus mid-career and go back to school to become neurologists. The plaintiff's reading of the statute is plausible, but it is dubious that Congress drafted the statute for the purpose of excluding professional education for the handful of instances the plaintiff's reading of the law would capture.

The Court appreciates the parties' efforts to shed light on the meaning of subsection (a)(3), and both parties have made logical arguments in support of the proposed meaning of the statute each party advances. Both parties offer plausible readings of subsection (a)(3). Although the Court finds neither party's reading especially persuasive, the Court need not resolve the dispute and determine the meaning of § 14706(a)(3). Even assuming that the plaintiff's interpretation is correct, he cannot recover because the statutory exclusion does not apply to his service pursuant to subsection (b).

### 2. 10 U.S.C. § 14706(b)

#### a. Text

Subsection (b) of § 14706 provides the following limitation on subsection (a)(3):

> The exclusion under subsection (a)(3) does not apply to service performed by an officer who previously served on active duty or

>       participated as a member of the Ready Reserve in other than a
>       student status for the period of service preceding the member's
>       service in a student status.

10 U.S.C. § 14706(b).

The ABCMR and the plaintiff interpret subsection (b) identically. The ABCMR found that subsection (b) provides "that service on active duty or in the Ready Reserve as an officer prior to the period of service addressed in subsection (a)(3) is NOT excluded from the [mandatory removal date] calculation and would therefore not be subtracted from the [mandatory removal date]." (AR 667 (capitalization in original).)

The plaintiff agrees that subsection (b) renders subsection (a)(3)'s exclusion inapplicable to the service leading up to an officer's enrollment in a program of advanced education. (ECF 50 at 20.) The plaintiff focuses on the final phrase, "for the period of service preceding the member's service in a student status," in arguing that subsection (b) clarifies and limits the effect of subsection (a)(3). (*See* ECF 62 at 14-15.) According to the plaintiff, the service described in the first clause of subsection (b) refers to the service also described in the final phrase. (*Id.*) Subsection (b), on this reading, renders (a)(3)'s exclusion inapplicable to "the period of service preceding the member's service in a student status." *See* 10 U.S.C. § 14706(b).

The ABCMR's and the plaintiff's interpretation of § 14706(b) is consistent with the Army's instructional briefing slide that the plaintiff has submitted. In relevant part, the slide explained that under subsection (b) "the officer's Reserve commissioned service prior to entering the advanced education program to become qualified in a special branch does count toward years of service for [mandatory removal date] purposes." (AR 742.)

Subsection (b), as the plaintiff describes it, ensures "that the only years excluded from an officer's [mandatory removal date] calculation are those years actually spent pursuing a professional degree, not all of the years spent in service leading up to the officer's enrollment in that professional degree program." (ECF 62 at 14 (emphasis omitted).) To illustrate the plaintiff's interpretation, consider the plaintiff's service history. In the Individual Ready Reserve and on active duty, the plaintiff served as a transportation officer for approximately four years (May 1988 – September 1992) prior to attending law school. (ECF 1, ¶¶ 21, 22.) During law school, he continued to serve as an officer in a USAR Troop Program Unit for approximately three years (October 1992 – May 1995). (*Id.* ¶ 24.) The four years preceding his time in law school would not be excluded from the plaintiff's total commissioned service, but his service during law school would be excluded. In other words, subsection (b) emphasizes that the exclusion under (a)(3) does not reset the clock—that only the three years of service during law school are excluded. (*See* ECF 72, Oral Arg. Tr., at 17.)

On the plaintiff's interpretation, subsection (b) does not apply to the issue in this case because it precludes only the plaintiff's service before law school from being excluded from his years of service. (ECF 62 at 17.) The plaintiff does not dispute that his service prior to law school should be included to calculate his mandatory removal date. (*Id.*)

9

The defendant's interpretation of subsection (b) before the Court differs not only from the plaintiff's but also from the interpretation of the ABCMR and of the Army briefing slide. According to the defendant, the plaintiff's service before law school renders his service during law school ineligible for subsection (a)(3)'s exclusion. The defendant now argues that, notwithstanding the ABCMR's interpretation, subsection (b) "controls the outcome of this case as a matter of law" and renders § 14706(a)(3)'s exclusion inapplicable to service by an officer, like the plaintiff, who has previously served on active duty or in the Ready Reserve in other than student status before attending a program of advanced education. (ECF 68 at 4; ECF 57 at 6, 11.) As applied to this case, the defendant reads subsection (b) to mean that subsection (a)(3)'s exclusion does not apply to the plaintiff's service during law school because the plaintiff served as a transportation officer after graduating from college and before attending law school.

The defendant rejects the plaintiff's and the ABCMR's interpretation of subsection (b), noting that the ABCMR cannot bind the Court if the ABCMR decision relies on an incorrect statement of law. (ECF 72, Oral Arg. Tr., at 39-40.) Regardless of the ABCMR's reasons for its interpretation, the defendant argues that the plaintiff's claim must fail as a matter of law:

> So -- and our view is that the [ABCMR] -- that interpretation [of (b)] in the [ABCMR's] latest decision is not the correct interpretation, and this could even be akin to a motion to dismiss for failure to state a claim on which relief is granted; that even if the [ABCMR] somehow is wrong on (a)(3), (b) bars the Plaintiff from relief. And so even if the [ABCMR]-stated reasons are incorrect, as a matter of law Plaintiff's claim must fail . . . .

(*Id.* at 40.) The defendant also argues that the Army's instructional briefing slide is incomplete and no longer used, and that an incomplete slide cannot supersede the meaning of the statute. (*Id.* at 13-14; ECF 68 at 9.)

Regarding the statutory language itself, the defendant argues that the plaintiff's proposed interpretation ignores all the words of (b) between the word "service" at the beginning and the phrase "service preceding the member's service in a student status" at the end. (ECF 57 at 11-12.) On the plaintiff's reading, the defendant argues, subsection (b) would be entirely superfluous because subsection (a)(3) already provides that the "exclusion is limited to '[s]ervice after appointment . . . *while* in a program . . . .'" (*Id.* at 12 (quoting 10 U.S.C. § 14706(a)(3)) (modifications in original) (emphasis in original).) In other words, the plaintiff's interpretation makes no sense because subsection (a)(3) is specifically limited to the time while attending professional school; there would be no reason to clarify that the exclusion does not apply to service before attending professional school. (ECF 68 at 5-6.)

The Court finds that the defendant's interpretation of subsection (b) is the most natural reading, considering the grammatical structure of the provision. *See Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) ("Because '[w]ords are to be given the meaning that proper grammar and usage would assign them,' . . . the 'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose' . . . ." (internal citations omitted) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 140 (2012))).

10

Subsection (b) contains no punctuation indicating a break. It first provides that the provision limits the exclusion found in subsection (a)(3): "The exclusion under subsection (a)(3) does not apply to service performed by an officer . . . ." 10 U.S.C. § 14706(b). What follows is a single restrictive relative clause modifying the noun "officer" and defining which officers cannot exclude their service under subsection (a)(3): those "who previously served on active duty or participated as a member of the Ready Reserve in other than a student status for the period of service preceding the member's service in a student status." *Id.*; *see also NACS v. Bd. of Governors of Fed. Rsrv. Sys.*, 746 F.3d 474, 485 (D.C. Cir. 2014) ("descriptive clauses explain, while restrictive clauses define").[3]

The provision's use of the passive voice is important. In the first clause, the word "service" is used generally—there are no limiting modifiers, such as "previous." What service is precluded from (a)(3)'s exclusion? The service *performed by an officer* within the scope of the restrictive relative clause. The word "service" in the first clause then is modified only by who performs it. It is not about which period of service; it is about which officer performed the service. Which officers cannot exclude their service under subsection (a)(3)? Officers "who previously served on active duty or participated as a member of the Ready Reserve in other than a student status for the period of service preceding the member's service in a student status." 10 U.S.C. § 14706(b). Back to the provision's passive construction: the exclusion in (a)(3) does not apply to service performed by the officers defined by the restrictive relative clause.

In this case, therefore, the exclusion in subsection (a)(3) does not apply to service performed by the plaintiff, who previously served on active duty and in the Ready Reserve as a transportation officer in other than student status for the period of service preceding his service in a student status pursuing his law degree.

The plaintiff makes two arguments against the defendant's interpretation, now adopted by the Court. First, he argues that the defendant's interpretation of subsection (a)(3) and subsection (b) read together amount to the same limitation because each would render the exclusion inapplicable to service by an officer who had served prior to attending professional school. (ECF 62 at 6.) The defendant's reading, the plaintiff argues, means that (b) is merely surplusage to (a)(3), as interpreted by the defendant. Second, the plaintiff argues that the defendant's interpretation of subsection (b) deprives the phrase "period of service" used in that subsection of any meaning, again rendering the defendant's reading to produce surplusage. (*Id.* at 15.) The Court disagrees.

First, if subsection (a)(3) means what the plaintiff claims (and what the Court has assumed for the purpose of this decision), then there is no surplusage on the Court's reading of subsection (b). Subsection (a)(3) would require the officer's initial service in the specialty to

---

[3] "A relative clause is said to be restrictive if it provides information that is essential to the meaning of the sentence. Restrictive relative clauses are usually introduced by *that* (or *who*/*whom*/*whose*) and are never set off by commas from the rest of the sentence." *The Chicago Manual of Style* ¶ 6.22 (16th ed. 2010) (italics in original).

follow the program of advanced education, while (a)(3)'s exclusion does not apply, pursuant to subsection (b), to service performed by officers who had served prior to that education. Even if the defendant's interpretation of subsection (a)(3)—that the officer's service in the specialty must be the officer's initial service—were correct, subsection (b) would clarify the scope of the exclusion.

Second, the Court's interpretation of subsection (b) does not deprive the phrase "period of service" of any meaning. The final phrase cannot carry the weight that the plaintiff places on it. The phrase, "for the period of service preceding the member's service in a student status," describes when officers must have previously served in other than a student status for (a)(3)'s exclusion to be inapplicable to their service. In arguing that the service described in the first clause refers to the service described in the final phrase, the plaintiff's proposed reading of (b) ignores the restrictive relative clause, the passive construction, and all the text between the word "service" in the first clause and the word "service" in the final phrase. On the Court's interpretation, the plaintiff is correct that the final phrase could be deleted without changing the meaning because the provision already uses the word "previously." (*See* ECF 62 at 14-15.) The phrase, however, is not inconsistent with the Court's interpretation. It merely clarifies the timing of the previous service described in the relative clause. This reading is not ideal, because it produces repetitive meaning within the provision, but it is the most natural syntactical reading of the language. *See Barton v. Barr*, 140 S. Ct. 1442, 1453 (2020) ("[R]edundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication.").

Pursuant to the most natural reading of the text of subsection (b), if an officer previously served on active duty or participated as a member of the Ready Reserve in other than a student status prior to attending a program of advanced education, then that officer cannot exclude his or her service under (a)(3). Subsection (a)(3) does not apply to service performed by such an officer.

### b. Legislative History

A court's interpretation of statutory language should consider only the actual text enacted by the legislature, without resort to legislative history. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("the authoritative statement is the statutory text, not the legislative history or any other extrinsic material"). Thus, the Court interprets § 14706 based on its actual language. Nevertheless, a court may consider the legislative history of a statute to ensure that it does not show a "clearly expressed legislative intention" contrary to the Court's interpretation of the statutory language. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987).

To support its proposed interpretation of the statute now adopted by the Court, the defendant cites the legislative history that produced the current statutory text. The provision was enacted in 1999 as part of the National Defense Authorization Act for Fiscal Year 2000, Pub. L. No. 106-65, § 515, 113 Stat. 512 (1999).

Section 514 of the original House bill placed within the exclusion itself language similar to the text Congress enacted as subsection (b):

> (3) service after appointment as a commissioned officer of a Reserve component while in a program of advanced education to obtain the first professional degree required for appointment, designation, or assignment as an officer in the Medical Corps, the Dental Corps, the Veterinary Corps, the Medical Service Corps, the Nurse Corps, the Army Medical Specialists Corps, or an officer designated as a chaplain or judge advocate, provided such service occurs before the officer commences initial service on active duty or initial service in the Ready Reserve in the specialty that results from such a degree. *This exclusion does not apply to service performed by an officer who previously served on active duty or participated as a member of the Ready Reserve in other than a student status*.

H.R. 1401, 106th Cong. § 514 (1999) (emphasis added). As written in the original House bill, it appears that the word "service" refers to the same service described in the exclusion, not prior service.

Section 519 of the original Senate bill likewise indicates that the language in the enacted subsection (b) was originally intended to preclude the service described in the exclusion from being excluded if the officer had previously served:

> (3) Except as provided in subsection (b), service as a commissioned officer of a reserve component while pursuing a program of advanced education leading to the first professional degree required for appointment, designation, or assignment as an officer in the Medical Corps, the Dental Corps, the Veterinary Corps, the Medical Service Corps, the Nurse Corps, the Army Medical Specialists Corps, or as a chaplain or judge advocate if the service—
>
>> (A) follows appointment as a commissioned officer of a reserve component; and
>>
>> (B) precedes the officer's initial service on active duty or initial service in the Ready Reserve in the professional specialty for which the degree if required.
>
> (b) PRIOR SERVICE PROFESSIONAL PERSONNEL.—
>
> *The exclusion in subsection (a)(3) does not apply to service described in that subsection that is performed by an officer who, prior to the described service—*
>
>> (1) *served on active duty*; or

13

> (2) *participated as a member of the Ready Reserve other than in a student status*.

S. 1059, 106th Cong. § 519 (1999) (emphasis added).

If the original House or Senate bills had been enacted, there likely would not have been any dispute between the plaintiff and the Army, but Congress enacted the version now before the Court. As the plaintiff notes, the original bills did not include the last phrase found in the enacted subsection (b); namely, the phrase, "for the period of service preceding the member's service in a student status," is absent. (*See* ECF 62 at 15.)

Congress did not explain its reason for the change in the conference report:

> The Senate bill contained a provision (sec. 519) that would not include the years spent in a college student commissioning service status in the computation of years of service for a reserve officer. The provision would permit reserve officers to serve several more years before facing mandatory separation based on years of service.
>
> The House amendment contained a similar provision (sec. 515).
>
> The Senate recedes with a clarifying amendment.

H.R. Rep. No. 106-301, at 730 (1999) (Conf. Rep.). The Court is unaware of any other explanation of the final enacted language, and therefore does not find in the legislative history any indication that Congress intended a meaning contrary to the Court's interpretation of the statutory language.[4]

### c. Application to the Plaintiff

The Court acknowledges that it is a close call. Both parties argue that the statute is clear and unambiguous on its face. Both parties proffer incompatible readings of the unambiguous text. Neither party's reading is without fault.

Having thoroughly reviewed the text to discern the most appropriate reading of the statute, the Court finds through its analysis that the defendant's reading is the most natural

---

[4] The committee report describing the original House bill noted that: "The section would align the procedures used to compute years of service for reserve officers with the procedures used to compute years of service for active duty officers." H.R. Rep. No. 106-162, at 352-53. Because it appears that Congress intended to align an existing exclusion for active-duty officers in creating one for reserve officers, the Court ordered the defendant to provide the active-duty analog of 10 U.S.C. § 14706. (ECF 69.) In response, the defendant cited the active-duty analog of 10 U.S.C. § 14507, not § 14706. (ECF 70.) The Court is unaware of any active-duty analog of § 14706 with which Congress intended to align the exclusion for reserve officers.

reading under proper standards of grammar and usage. The Court further finds nothing in the legislative history to suggest that Congress meant to express a different interpretation of the statute. In contrast, the plaintiff's proposed reading would effectively rewrite the statute Congress drafted and enacted.

The Court finds that, given its most natural reading, consistent with normal standards of grammar and usage, 10 U.S.C. § 14706(b) supports the defendant's reading. Subsection (a)(3)'s exclusion does not apply, pursuant to subsection (b), to service performed by an officer who, like the plaintiff, previously served on active duty or participated as a member of the Ready Reserve in other than a student status prior to attending a program of advanced education. Because the plaintiff had previously served as a transportation officer on active duty and in the Individual Ready Reserve prior to attending law school, his service in the USAR concurrent with his time in law school is not eligible for subsection (a)(3)'s exclusion.

### B. The ABCMR's Decision

Having decided the meaning of § 14706(b), the Court need not canvass and evaluate the ABCMR's reasoning. The Court must uphold the decision "unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *See Barnick*, 591 F.3d at 1377. Although the ABCMR's decision rested on its interpretation of § 14706(a)(3), not (b)—to which the ABCMR and the plaintiff give the same meaning—its decision to deny the plaintiff relief is required by the most natural reading of § 14706(b).

The plaintiff argues that the ABCMR's decision is arbitrary, capricious, and contrary to the statute, because the ABCMR relied on "extraneous and irrelevant factors" to interpret § 14706(a)(3). (ECF 50 at 21.)

For the plaintiff to succeed on his claim, the Court would have to accept his interpretation of both § 14706(a)(3) and (b). The Court's rejection of his proposed interpretation of (b) is fatal to his claim. Even if the ABCMR misinterpreted subsection (a)(3), relying on extraneous factors, the statutory exclusion under (a)(3) does not apply to the plaintiff's service during law school pursuant to subsection (b). Significantly, the ABCMR found that the plaintiff attended law school after his initial service on active duty and in the Ready Reserve, and the plaintiff does not dispute that he served on active duty and in the Individual Ready Reserve prior to law school. (*See* AR 668; *see also* ECF 1, ¶¶ 21-22.) Under subsection (b), that fact is dispositive; the plaintiff's service during law school is not excludable from his total commissioned service.

The ABCMR's decision to deny the plaintiff relief is consistent with § 14706. The Court does not reach the question of whether the ABCMR's consideration of the so-called extraneous factors is arbitrary and capricious. The Court's interpretation of subsection (b) reaches the same result as a matter of law. The ABCMR's decision therefore was not arbitrary, capricious, or contrary to law.

## IV.     CONCLUSION

The statutory exclusion under 10 U.S.C. § 14706(a)(3) does not apply to the plaintiff's service pursuant to § 14706(b).  The ABCMR's finding that the plaintiff's commissioned service was properly calculated to include his service during law school is not arbitrary, capricious, or contrary to law.  Accordingly, the Court grants the defendant's motion for judgment on the administrative record and denies the plaintiff's motion for judgment on the administrative record.

The Court will issue an order in accordance with this memorandum opinion.

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**
